IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RED VALVE COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 15-364 |
| ) | Hon. Nora Barry Fischer |
| ARMADILLO AUTOMATION, INC. d/b/a ) | |
| ONYX VALVE COMPANY, ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

On March 18, 2015, Plaintiff Red Valve Company, Inc. (hereinafter "Red Valve") filed this patent infringement action against Defendant Armadillo Automation, Inc. d/b/a Onyx Valve Company (hereinafter "Onyx") to enforce its rights in United States Patent Number 7,104,279 (the '279 Patent), asserting induced infringement in violation of 35 U.S.C. § 271(b).[1] (Docket No. 1 at ¶ 20). On April 21, 2015, the Clerk of Court entered default against Onyx for failure to respond. (Docket No. 11). On May 11, 2015, the parties filed a Joint Motion to Vacate the Clerk's Entry of Default, (Docket No. 16), which the Court granted the next day, (Docket No. 17).

Onyx filed a motion to dismiss Red Valve's Complaint on May 14, 2015. (Docket No. 22). In response to same, Red Valve filed its First Amended Complaint ("FAC"), amending its

---

[1] While Onyx makes arguments covering both direct and contributory infringement, (Docket No. [31-1] at 4–7), Red Valve clarifies that its only theory of infringement at issue in this case is induced infringement, under 35 U.S.C. § 271(b). (Docket No. 32 at 5 n.1).

infringement contentions and adding a claim of tortious interference with prospective contractual relations under Pennsylvania common law. (Docket No. 29). Onyx again moved to dismiss. (Docket No. 31). Concomitantly with its Motion, Onyx filed a brief in support thereof. (Docket No. 31-1). Red Valve responded, (Docket No. 32), Onyx replied, (Docket No. 34), and Red Valve filed a sur-reply, (Docket No. 38). A Hearing on Onyx's motion to dismiss was held on September 14, 2015. (Docket No. 44). At the hearing, the parties were given the opportunity to provide supplemental briefing, and subsequently did so. (Docket Nos. 47, 48).

### I. Background

Red Valve is a Pennsylvania corporation with a principal place of business in Carnegie, Pennsylvania. (Docket No. 29 at ¶ 1). Red Valve is the owner of the '279 Patent, which issued on September 12, 2006, and is entitled "Method and Apparatus for Preventing Stagnation in Fluid Reservoirs." (Docket No. 29-1). Onyx has its principal place of business in Cinnaminson, New Jersey. (*Id.* at ¶ 2). This is not the first time Red Valve has sued Onyx alleging patent infringement. *See Red Valve Co. v. Armadillo Automation, Inc.*, Civ. No. 05-734 (W.D. Pa. 2005). The parties settled that case shortly after filing. (Civ. No. 05-736, Docket No. 11).

Red Valve alleges in the FAC that Onyx, "has been and continues to actively induce . . . infringing activity by encouraging its customers to purchase and install duckbill and wafer-type valves in water distribution systems, knowing that such systems with such valves installed will directly infringe the '279 patent." (*See* FAC at ¶ 31). Red Valve points to several projects incorporating Onyx valves, which Red Valve alleges infringe the '279 Patent. (*Id.* at ¶¶ 23, 27, 30). Red Valve further alleges that Onyx has formed a relationship with an entity named Landmark, wherein "Onyx provides Landmark with customer support and detailed submittal

packages in relation to the potable mixing systems being constructed by Landmark." (*Id.* at ¶ 39).

Red Valve finally alleges one count of tortious interference with prospective contractual relations, arguing that "[i]n attempting to sell and selling its valves for use in potable water mixing systems that infringe the '279 Patent, Onyx caused or is attempting to cause the persons responsible for procuring valves for use in these mixing systems not to enter into a contract for such valves with Red Valve." (FAC at ¶ 83).

In its present motion to dismiss, Onyx argues that Red Valve has failed to state a viable claim upon which relief could be granted against Onyx as to both claims. (Docket No. 31). In response, Red Valve maintains that it has included sufficient facts to survive said motion. (Docket No. 32).

## II. Legal Standard – Motion to Dismiss[2]

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R .CIV. P. 8(a)(2). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 556 U.S. at 684. The court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that

---

2. The Federal Circuit applies regional circuit law for procedural questions not pertaining to patent law, including 12(b)(6) motions. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007) ("A motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law. Thus, on review we apply the law of the regional circuit.").

requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Id*. at 678–79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). Further, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted). The determination as to whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 556).

In light of *Iqbal*, the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "The court's determination is not whether the non-moving party 'will ultimately prevail' but whether that party is 'entitled to offer evidence to support the claims." *Telecomm Innovations, LLC v. Tico Co.*, 66 F.Supp.2d 390, 393 (D. De. 2013) (quoting *United States ex rel. Wilkins v. United Health Grp.*, 659 F.3d 295, 302 (3d Cir. 2011)). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### III. Induced Infringement[3]

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To establish inducement, a plaintiff must show that: (1) there has been direct infringement by another; (2) the defendant knew or should have known that its actions would induce actual infringement; (3) the defendant had the specific intent to induce infringement by another; and (4) the defendant took affirmative steps to aid or abet the infringement. *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.")). Onyx concedes that Red Valve sufficiently plead the first element; Onyx contends Red Valve failed to adequately plead the second, third, and fourth elements. (Docket No. 31-1 at 7).

### A. Knowledge

Onyx first contends that Red Valve failed to sufficiently plead that Onyx knew or should have known that its actions would induce actual infringement. "[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, ___, 131 S.Ct. 2060, 2068 (2011). Actual knowledge or willful blindness suffices to prove the knowledge element of induced infringement; however,

---

[3] In its response to Onyx's motion to dismiss, Red Valve states "[o]nly induced infringement under 35 U.S.C. § 271(b) has been plead. Thus, Onyx's arguments concerning direct infringement and contributory infringement are unnecessary." (Docket No. 32 at 5 n.1 (internal citations omitted)). The Court's review of the FAC causes it to agree with Red Valve's statement. Accordingly, Onyx's arguments regarding direct and contributory infringement will not be addressed as the FAC does not purport to state such claims.

willful blindness requires "active efforts by an inducer to avoid knowing about the infringing nature of the activities." *Id.* at 2069–70. At the motion to dismiss stage, Red Valve need only allege facts sufficient to plausibly infer that Onyx knew that the induced acts (*i.e.*, construction of water mixing systems containing Onyx valves) constituted infringement of the '279 Patent. *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) ("To survive [defendant's] motion to dismiss, therefore, [plaintiff's] amended complaints must contain facts plausibly showing that [defendant] specifically intended their customers to infringe the [patent-in-suit] and knew that the customer's acts constituted infringement.").

Red Valve has met its burden of pleading sufficient facts to allow the Court to plausibly infer that Onyx knew that the induced acts constituted infringement. Specifically, Red Valve has averred that: Onyx knew of the '279 Patent, (FAC at ¶ 21); Onyx was aware of Red Valve's patent marking literature, identifying such mixing systems as covered by the '279 Patent, (FAC at ¶¶ 42–45); Onyx's owner discussed the '279 Patent, its validity, and its applicability to potable water mixing systems with a valve distributor, (FAC at ¶ 50); Onyx discussed the '279 Patent with its contractor customers, including its partner Landmark, (FAC at ¶¶ 44–48); Onyx allegedly encouraged some of these contractors to disregard the '279 Patent, (FAC at ¶ 49); Onyx's concession that the market for these products is small;[4] and Onyx is represented by a former Red Valve employee, Frank Nizzi, who is aware of the '279 Patent and its applicability to potable water mixing systems, (FAC at ¶¶ 51–53).

While some of these facts and inferences drawn therefrom, individually may not plausibly assert the requisite knowledge, as required under § 271(b), collectively, the Court finds

---

[4] (*See* Docket No. 49 at pages 14:22–15:8) (estimating that there are five or six valve producers in the marketplace).

they do. Of particular interest is the allegation regarding Onyx's owner's statements regarding the '279 Patent. (FAC at ¶ 50). Red Valve alleges:

> In 2011, the owner of Onyx, David Gardellin, was informed of the '279 Patent and its applicability to potable water mixing systems by an account manager at HD Supply, a distributor of valves and other industrial equipment components. On information and belief, Mr. Gardellin's reply was that the '279 Patent was not valid and that Onyx would "see Red Valve in court."

(*Id.*). Accepting the facts above, it is plausible to infer that Onyx was aware of the '279 Patent and that, at least some of the systems into which Onyx's valves were installed infringed it.

Onyx argues that, while the FAC alleges that Red Valve gave Onyx notice of the '279 Patent in 2006, "Red Valve fails to assert it gave notice to Onyx that its valves were being used in allegedly infringing systems," or how the accused systems allegedly infringe. (Docket No. 31-1 at 7–8). Onyx's contention fails, however, because taken together Red Valve's assertions are enough to meet the pleadings standard. Additionally, Onyx's representations at the oral argument contending that there was no documentation providing notice of infringement, likewise fail because the Court must assume for purposes of this motion that the facts pled by Red Valve, including the facts detailed above, are true.[5] *See e.g., Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) ("[S]tating . . . a claim requires a complaint with enough factual matter (*taken as true*) to suggest' the required element.") (quoting *Twombly*, 550 U.S. at 555) (emphasis added). This Court, therefore, finds that Red Valve has

---

[5] Moreover, in its supplemental briefing, Red Valve attached as an exhibit a letter sent via certified mail advising Onyx that its actions possibly infringe the '279 Patent. (Docket No. 48-3). Parallel to Judge Schwab's analysis in *Brookville Equip. Corp. v. A.L. Lee Corp.*, the Court takes note of Red Valve's letter attached as Exhibit 3 to its supplemental brief because Red Valve has explicitly relied upon it in its complaint. *See* 2013 WL 1195116, at *3 (W.D. Pa. Mar. 22, 2013) ("[a]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

sufficiently pled the second element of induced infringement.

### B. Intent

Onyx next contends that Red Valve failed to sufficiently plead the intent requirement for induced infringement. "[T]he intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). "Beyond that threshold knowledge, the inducer must also have an affirmative intent to cause direct infringement." *Id.* In other words, "inducement requires 'that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Id.* (quoting *MEMC Elec.*, 420 F.3d at 1378).

Onyx argues that, "[a]t most, [its] alleged 'encouragement' rises to the level of 'intent to cause the acts that produce direct infringement,' which is insufficient to allege induced infringement." (Docket No. 31-1 at 10 (citing *DSU Med. Corp.*, 471 F.3d at 1306)). In support of this argument, Onyx cites several cases, each of which will be briefly discussed. In *Intellectual Ventures I LLC v. Bank of Am., Corp.*, the court granted the defendants' motion to dismiss, finding that the plaintiff "did not allege facts plausibly showing that Defendants intended for its [sic] customers to infringe the" asserted patent. Civ. No. 13-358, 2014 WL 868713, at *1 (W.D.N.C. Mar. 5, 2014). There, the plaintiff pointed to defendants' website, which advertised the accused products, which were allegedly used in an infringing manner. *Id.* at *2. The court granted the motion to dismiss, finding that the complaint did "not point to specific components on the website establishing that Defendants knew that its [sic] customers used the accused products in an infringing manner." *Id.* Onyx argues the case is apposite, because, akin to the complaint in *Intellectual Ventures*, Red Valve's FAC merely alleges knowledge that Onyx's

8

product is being used by a customer, not that it is being used in an infringing manner. (Docket No. 31-1 at 10).

In *Unisone Strategic IP, Inc. v. Life Techs. Corp.*, the court granted the defendant's motion to dismiss the plaintiff's induced infringement claims. Civ. No. 13-1278, 2013 WL 5729487, at *1 (S.D. Ca. Oct. 22, 2013). There, the court determined that the complaint inadequately pled both the knowledge and intent elements of inducement. *Id.* at *2–3. As to the intent element, the court found that the complaint merely alleged that defendant had the intent to induce the acts that cause infringement, not infringement, itself. *Id.* at *3. The court further found that the remaining allegations were "conclusory and not sufficient to plausibly infer that Defendant had the specific intent to induce others to infringe." *Id.* Onyx contends that *Unisone* is persuasive because it merely "provides instruction, technical support, and training for using its own [product], and nothing more." (Docket No. 31-1 at 11 (quoting *Unisone*, 2013 WL 5729487, at *3)). Onyx asserts those activities are "not sufficient to plausibly infer that Defendant had the specific intent to induce others to infringe." (*Id.*).

Similarly, in *MONEC Holding AG v. Motorola Mobility, Inc.*, Judge Stark adopted a magistrate judge's report and recommendation, which recommended granting a motion to dismiss induced infringement claims where the magistrate judge concluded that the complaint failed to plead both sufficient knowledge and intent. 897 F.Supp.2d 225, 235 (D. Del. 2012). As to the intent element, the court determined that the complaint's averments were merely conclusory and that "[a]llegations of the marketing activities of the Defendants do not, on their own, demonstrate that Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement." *Id.* Onyx argues *MONEC*

9

supports its position because, like the allegations therein, all that the FAC can reasonably be read to allege is that Onyx promoted its own products with "a speculative awareness that infringement might occur." (Docket No. 31-1 at 11).

Red Valve responds that:

> the allegations in the FAC, taken as true, allow for a conclusion that Onyx knew the potable water mixing systems, if constructed, would infringe the '279 Patent. Onyx nevertheless worked closely with its customers so as to ensure the construction of infringing mixing systems using Onyx valves. A plausible inference is that Onyx took these actions with the specific intent to cause infringement of the '279 Patent.

(Docket No. 32 at 11 (internal citations omitted)). It further argues that the cases Onyx cites in support of its argument are inapposite, as, in each case, the accused infringer did not know that the acts being encouraged led to infringement. (*Id.* at 12). Upon review of each of these cases, Red Valve's argument is well taken. In *Intellectual Ventures I LLC*, the court granted the motion to dismiss, finding that the complaint failed to "point to specific components on the website establishing that Defendants knew that its [sic] customers used the accused products in an infringing manner." 2014 WL 868713, at *2. Yet here Red Valve alleges that Onyx knew of the designs of the systems to be built and knew that they would infringe the '279 Patent, when constructed. (FAC at ¶¶ 31, 34–37).

As to *Unisone*, it can be factually distinguished because Red Valve has alleged facts beyond merely pointing to Onyx's website and claiming that a service (or, in this case, a product listed thereon) infringes. Red Valve has alleged concerted efforts on Onyx's part to encourage third parties to use its products in a configuration that Onyx knows infringe the '279 Patent. (FAC at ¶¶ 22–31). Red Valve also alleges that Onyx provides support services and "detailed

10

submittals" to contractors to induce them to purchase Onyx valves. (FAC at ¶ 32). This is supported by Exhibit E to the FAC, which contains a transcript of a video shown at a trade show, wherein a Landmark representative stated: "Onyx Valve's [sic] provided us with unparalleled customer support and very detailed submittal packages that we need in order to get our systems through." (Docket No. 29-5).

Red Valve similarly argues *MONEC* is not on point because Onyx was aware that its actions "will cause infringement." (Docket No. 32 at 12). Contrary to Onyx's claim that it merely had a "speculative awareness that infringement might occur," (Docket No. 31-1), Red Valve's allegation regarding Onyx's owner's statement that Onyx would "see Red Valve in court," (FAC at ¶ 50), allows the Court to plausibly infer that Onyx's actions were intended to induce others to infringe the '279 Patent. Again, why would Onyx's owner expect to "see Red Valve in court," unless he thought his company's actions induced infringement of the '279 Patent? Based on the foregoing, the Court concludes that Red Valve has pleaded sufficient factual averments to support the specific intent element of induced infringement.

### C. Active Inducement

With regard to induced infringement, Onyx maintains that Red Valve failed to plead sufficient facts to allow a court to plausibly infer active inducement. Active inducement requires "the taking of affirmative steps to bring about the desired result." *Global-Tech*, 131 S.Ct. at 2065. "The accused infringer must have 'knowingly aided and abetted' direct infringement." *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625 (Fed. Cir. 2015) (quoting *Warner-Lambert Co. v. Apotex Corp.* 316 F.3d 1348, 1363 (Fed. Cir. 2003)). The scope of the affirmative act can be "as broad as the range of actions by which one in fact causes, or urges, or

encourages, or aids another to infringe a patent." *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) (quoting *Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 411 (5th Cir. 1963)). However, "[the] sale of a lawful product by lawful means, with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement." *Id.* (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1276 n.6 (Fed. Cir. 2004) (internal quotation marks and citation omitted)).

By pleading that Onyx offers to provide detailed submittal packages, or other customer support to third parties to complete projects that allegedly infringe Red Valve's patent, Red Valve has met its burden to sufficiently plead active inducement. The FAC avers that Onyx encouraged the installation of its valves in infringing potable water mixing systems through its advertisement, customer support, and sales process, as previously discussed. (FAC at ¶¶ 31, 32, 49) Taking the facts as alleged in the FAC as true, as the Court must at this stage of the litigation, Onyx had knowledge of the proposed designs of the mixing systems, and it knew that those designs infringed the '279 Patent. (*Id.* at ¶¶ 31, 34–36). Further, in at least one instance, the designs specifically called for Red Valve products to be used. (FAC at Exhibit I). Moreover, Red Valve contends that Onyx received Red Valve bid proposals which contain the following notice:

> TIDEFLEX MIXING SYSTEM (TMS) PATENT NO. 7,104,279
> The Tideflex Mixing System (TMS) is a patented and proprietary technology. Acceptance of a Purchase Order by Tideflex Technologies shall issue site specific license agreement to purchase and install a Tideflex Mixing System and/or components thereof.

(*Id.* at ¶ 45). By allegedly encouraging contractors to use its valves over those of Red Valve by offering to provide detailed submittals and customer support, Onyx thus ensured infringement of the '279 Patent absent the involved contractor taking affirmative steps to otherwise obtain a

license.

Onyx argues that Red Valve failed to properly plead active inducement by relying extensively on *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.* for the proposition that its conduct cannot constitute indirect infringement. (Docket Nos. 31-1 at 12–14, 34 at 1, 5–8, 47 at 7–8) (citing *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630–31 (Fed. Cir. 2015)). But, its reliance is largely misplaced. By way of background, *Takeda* addressed denial of a preliminary injunction within the context of a patent infringement claim relating to a drug used to treat gout. 785 F.3d at 627. The defendant generic manufacturer received approval from the FDA to market its version of the drug in ways that did not infringe on the plaintiff's patents, and was labelled accordingly. *Id.* at 630, 634–35.

The plaintiff manufacturer sued the defendant, arguing that the label induced infringement. *Id.* at 628. The label instructed patients who were taking the drug as a prophylaxis for gout to tell their healthcare provider if they experienced a gout flare, and further warned that the safety and efficacy of the drug was not tested for acute treatment. *Id.* at 630. Plaintiff argued that instructing a patient to tell his healthcare provider if he experienced a gout flare while using the drug constituted induced infringement because the healthcare provider could then tell the patient how to use the drug in an off-label manner that would infringe plaintiff's patents. *Id.* at 632. Because the plaintiff did not provide any "evidence that the label would necessarily lead doctors who are consulted by patients taking [the drug] to prescribe an off-label use of it to treat acute gout flares," the court held that the defendants did not label the medicine in an infringing manner. *Id.*

*Takeda* is distinguishable in two regards. First, *Takeda* is procedurally distinguishable. In

*Takeda*, the court was assessing plaintiff's motion for a preliminary injunction, which requires a court to determine the likelihood of a plaintiff's success on the merits. *Takeda*, 785 F3d at 629. In contrast, the Court in this case is addressing a motion to dismiss, wherein it must accept as true all well-pleaded facts in the FAC, and determine whether, *in toto*, they plausibly state a claim to relief. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Twombly*, 550 U.S. at 556)).

This procedural difference is significant because when ruling on a preliminary injunction, a court may accept evidence outside of the complaint, which it generally cannot do in the context of deciding a motion to dismiss. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("In passing on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true and affidavits and other evidence produced on application for a preliminary injunction may not be considered.") (citing *Polk Co. v. Glover*, 305 U.S. 5, 9 (1938); *Gibbs v. Buck*, 307 U.S. 66, 76, (1939)) In fact, evidence outside of the complaint was crucial to the decision in *Takeda*. 785 F.3d at 632–33 (considering affidavits and other "evidence" in reviewing district court's denial of preliminary injunction).

Second, this case is distinguishable because unlike *Takeda* where there were no allegations or evidence showing that infringement *necessarily* would occur if the label's instructions were followed, *Id.* at 632., here, there are such allegations. At the risk of being overly repetitious, the FAC alleges that Onyx is aware of the design of the water mixing systems, is aware that the systems infringe the '279 Patent, and is aware that, should the project be completed with Onyx's valves, infringement *will* occur. (FAC at ¶¶ 31, 34–36).

Onyx's last argument regarding active inducement is that the FAC and Red Valve's

14

arguments misstate its role in the process. (Docket No. 34 at 7). Specifically, Onyx argues that it "does not design or participate in the design or construction of any already allegedly infringing systems." (*Id.*). As the pending motion is to dismiss pursuant to Rule 12(b)(6), the Court cannot consider such an argument as it clearly requests the court determine a factual issue outside the FAC. Such argument is more properly brought at the summary judgment stage. Based on the forgoing, the Court holds that Red Valve has sufficiently pled active inducement.

## IV. Willful Infringement

Onyx next contends that Red Valve failed to sufficiently plead willful infringement. In order for a plaintiff to prove willful infringement, it must demonstrate by clear and convincing evidence that the alleged infringer acted despite an "objectively high likelihood that its actions constituted infringement" and that the "objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). *Seagate*, however, "address[es] what is necessary to *prove* a claim of willfulness, not whether a plaintiff has *sufficiently alleged* willful infringement as a pleading matter." *Rambus, Inc. v. Nvidia Corp.*, Civ. No. 09-3343, 2008 WL 4911165, at *2 (N.D. Ca. Nov. 13, 2008) (emphasis added). "Willfulness is a fact-intensive issue that is difficult to resolve at the pleading stage." *Best Med. Inter., Inc. v. Accuray, Inc.*, Civ. No. 10-1043, 2011 WL 860423, at *9 (W.D. Pa. Mar. 9, 2011) (McVerry, J.). Based on the facts discussed throughout the inducement analysis above, which the Court must accept as true, the FAC sufficiently provides factual support that Onyx knew of the '279 Patent and that it knew its actions constituted infringement. (FAC at ¶¶ 21, 31, 34–36). Thus, Red Valve has sufficiently pleaded its willful infringement allegation.

## V. Tortious Interference

Onyx's final contention is that Red Valve failed to sufficiently plead tortious interference with existing or prospective contractual relationships.

> Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 530 (3d Cir.1998)). Onyx concedes that Red Valve has sufficiently plead the fourth element, but argues that Red Valve has inadequately pled the first, second, third, and fifth elements. (Docket No. 31-1 at 16).

### A. Existence of a Contractual or Prospective Contractual or Economic Relationship Between Plaintiff and a Third Party

Onyx argues that, because Red Valve does not plead "allegations of impending sales of valves" to any of the contractors identified in the FAC, it "has provided only the assumption that such third party contractors would have used its products." (Docket No. 31-1 at 16). Yet, the FAC alleges that "[t]he initial plans for the Hardwick Job expressly identified Tideflex, or approved equal, inlet and outlet check valves to be used in the potable water mixing system." (FAC at ¶ 71). "Tideflex is a division of Red Valve." (*Id.* at ¶ 72). Further, "[t]he specification for the DeKalb County Job expressly identified Tideflex Technologies, PROCO, and approved equals as the approved manufacturers of the check valves to be used with the potable water mixing system." (*Id.* at ¶ 73). Red Valve further alleges that, "[o]n information and belief, the

specifications for other infringing mixing systems for which Onyx has ultimately been the valve supplier have expressly identified Red Valve as the *sole* or one of a few approved valve supplier [sic]." (*Id.* at 74 (emphasis added)). Finally, and most telling, in at least one instance, the designs specifically called for Red Valve valves to be used, but Onyx instead supplied the valves used on that job. (FAC at ¶ 25–27; Exhibit I). Based on these factual assertions, it is plausible that there was at least a reasonable likelihood that Red Valve would have made at least some of these sales absent Onyx's actions, and therefore, the Amended Complaint is sufficient for discovery to proceed.

### B. Purposeful Action by the Defendant, Specifically Intended to Harm an Existing Relationship or to Prevent a Prospective Relation from Occurring

Onyx's arguments as to this element are similar to those it proffers against the induced infringement claims. For the reasons stated above, this Court finds that Red Valve has sufficiently pled the purposeful action element of its tortious interference claim.

#### i. Absence of Privilege or Justification on the Part of the Defendant

Onyx's sole argument as to this element appears to be that since it believes that Red Valve has failed to adequately plead infringement, "any tortious interference claims based upon infringement fail." (Docket No. 31-1 at 18). Because this Court has now found that Red Valve sufficiently pled its induced infringement claim, Onyx's challenge to this third element must likewise be rejected.

#### ii. A Reasonable Likelihood that the Relationship Would Have Occurred But For the Defendant's Interference

In conjunction with its prior contention that Red Valve has failed to allege a reasonable likelihood of a contractual relationship with third parties, Onyx argues that Red Valve has failed

to alleged sufficient facts to support a finding that Onyx's actions interfered with a prospective relationship. (Docket No. 31-1 at 16). But, the FAC suggests otherwise. Red Valve asserts among other things: (1) that it "had an existing relationship with the third-party consulting engineers responsible for selecting the valves to be used in . . . the Hardwick Job, the North Las Vegas Job, and the DeKalb Job," (FAC at ¶ 68); (2) that Red Valve has supplied products to Landmark, a company that installs potable water mixing systems, (Id. at ¶ 69); and (3) Onyx's interference has compromised Red Valve's ability to sell its mixing system at the Madison Job, a job that includes a specification expressly identifying Red Valve as the approved manufacturer for the mixing system, (Id. at ¶ 77, 79). Because Red Valve has pled such facts, this Court finds that Onyx's challenge fails.

AND NOW, this 16th day of December, 2015, for the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), (Docket No. 31), is DENIED.

IT IS FURTHER ORDERED that Defendant shall answer Plaintiff's Amended Complaint on or before December 30, 2015.

*s/Nora Barry Fischer*  
Nora Barry Fischer  
United States District Judge

cc/ecf: All counsel of record